Mr. Birari May it please the Court, my name is David Birari. I represent the appellant, Shawn Scherer. He asks that you vacate the judgment on his revocation and remand for a new revocation hearing. At the revocation hearing, the district court interrupted Scherer's counsel as she began to discuss the state criminal charges which form the basis of the fifth violation of the conditions of release. The district court used terms such as don't gild the lily, I'm not buying what you're selling, those sorts of things. The district court then proceeded to ask procedural questions about what had transpired with this violation and in the state court proceedings. Essentially simple yes-no questions. The district court then instructed the counsel to move on to a different area. Counsel asked to be allowed to comment or to respond to either this issue or to generally the discussion that was starting to occur. And the district court said, quote, you know what, I don't want to hear it. Counsel then moved on to other areas. David Birari How is this different from a judge trying to, and I understand there's going to be an argument made, but a judge saying, you know, I read that part of the memo, not about the specific argument you're making. I read that part of the memo. I'm just, you know, I've read it. I don't need to hear any more about that. I just think it's a loser argument, which judges can do. What makes this different from that? Andrew Coyne Well, we know here that the district court was very interested in this proceeding. He was talking about the state proceeding, the procedural matters. He refers to it later on when he's announcing his sentencing. He's referring to documents he's reviewed that are outside of the record in making this sentence. And so this is an important part of the sentence that is to be issued. This isn't like a situation where counsel or even the defendant themselves in their elocution is talking about something that really isn't relevant or is decided or just simply not on the table. This is a key, important factor. And it's disabusing the district court of some of its preconceptions, some of its prejudgments on these issues, because we know all of these cases that have been submitted and cited by myself and counsel reference that courts need to come to revocation sentencing and sentencing in general. Scalia I want you to, I got it early this morning, the Taylor case from the Seventh Circuit. Andrew Coyne Yeah. Scalia Have you, if you've had time to read it. Andrew Coyne I did. Scalia Are familiar with it either. It seems awfully similar, and I know it's unpublished. Andrew Coyne Sure. Scalia How would you respond to what the Seventh Circuit did in that case? Andrew Coyne Because that was an irrelevant discussion, sort of this reasonable limitation idea I referenced in my brief. In Taylor, they're talking about crimes that the defendant had committed on release and then her participation with law enforcement afterwards. And the district court in Taylor said, you know, I'm not even considering what she did in Minnesota, so I'm not really considering that she had involvement with law enforcement and was participating, because it's just not relevant to my analysis and what I'm doing with sentencing, which is 180 degrees different from what's happening. Scalia Well, they have a kind of two-part analysis that you see and there was no evidence. Andrew Coyne Do you agree kind of with their two-part analysis? They say first, a district judge may interrupt counsel, and second, they say the record shows that the judge did consider that argument. Is that a good test? I think it goes back to the more fundamental statement about, I believe it's Williams, which is the case they're providing, which says the court has to have essentially an open mind come in and hear the arguments and not prejudge the sentencing. And that's what we have here. It's sort of more of a fundamental error that we have in Scherer's case. Scalia Was it that the court prejudged the outcome or that the judge believed he had an adequate understanding of the argument that was being made about the defendant's conduct with respect to the state prosecution? Andrew Coyne It's sort of both. Scalia That what, how the court assessed what the defendant did in the state prosecution as being used to demonstrate what his sentence should be in the Federal revocation was just not going to be persuasive? Andrew Coyne The issue is so many of the concerns expressed by the district court relate to participating with authority figures, whether it's a probation officer or others, whether it's following rules, following orders, doing what you're supposed to do. Mr. Scherer was a young man who had spent a considerable amount of time in prison. What the important part here is, is the time from the conduct that was, that underlies the revocation, the bad things he did. And then this year later, where he's had a significant reformation in his conduct and his interactions with others, and the district court is sort of moving that timeline by talking about the Rule 43 and talking about that procedure and kind of the disparaging, it appears, terms, that counsel needs to be able to adequately assess that, have a conversation with the lawyer. Breyer We agree our standard is plain error here. Andrew Coyne No. I believe it's a reason to disagree. Breyer Oh, boy, there was no objection, right, when the judge said this? Andrew Coyne I would disagree on the Valterio Ortega case, which is also citing Lee, where they say, you know, that's sufficient to preserve. When you try to respond, try to continue the conversation, and you're still cut off, that's sufficient to preserve the objection for the abusive process to apply. Even under the plain error analysis, this is a plain error. It's all of the cases that counsel have discussed. They always say, look, counsel gets to speak at a revocation session. Breyer That was a Fifth Circuit case you talked about. Was the case you referred to a Fifth Circuit case? Andrew Coyne Correct. Breyer Okay. Proceed.  And that's also where I've been trying to go ahead. Andrew Coyne Yeah. Also referencing Lee, which is a Fifth Circuit ally. Breyer All right. Andrew Coyne They all, we all understand that counsel gets to speak. Whether it's the government counsel or the defense counsel gets to speak. Breyer Well, it can't be unlimited. You agree with that. I'm sorry to interrupt you so much, but it can't be unlimited, huh? Andrew Coyne Right. And that's why. Breyer Filibuster. You know about filibusters. Go ahead. Andrew Coyne Right. It can't be limited. There are reasonable limitations, like the Taylor illustrates, like Thurman illustrates. Here, it wasn't a reasonable limitation. They cut off a discussion of things that were salient to the issues in sentencing and of concern to the district court in sentencing. The court's statement, you know what, I don't want to hear it. Breyer Could the error be harmless? Andrew Coyne No. Not here. Because the sentence was entered at 36 months, and it could have entered a lower sentence. It's harmless here. Breyer But you agree there's not a structural error here? Andrew Coyne This is not a structural error, because we have some older 90s cases that do say reversible error per se, but the rules have been changed since then. So thank you for that. Breyer Proceed. Andrew Coyne I think that kind of is in this area that the Fifth Circuit's talking about in the cases cited in Thurman, where if they could have entered a lower sentence, it's a harm. It's not quite per se, but it's in that situation of, look, if they could have entered something within the guidelines or lower, we find prejudice here under that third prong. And I see my time's running out. I'd like to reserve the remainder for rebuttal. Thank you. Roberts Thank you, Mr. Barn.  Good morning. May it please the Court, Mr. Barari. My name is Megan Healy on behalf of the United States. The United States respectfully asks this Court to affirm the judgment of the District Court. No error occurred, plain or otherwise. But even if an error had occurred, the record here shows it was harmless and did not affect Mr. Scherer's substantial rights. There is no error here. Mr. Scherer received all the process that he was due under Rule 32.1. I'd like to emphasize just how narrow the limitation that the District Court imposed on counsel's argument is. The District Court did not limit argument on the facts underlying the State charges or Violation V. It did not limit argument on Mr. Scherer's history of conflict with authority figures. It did not limit argument on Mr. Scherer's rehabilitation and the positive mindset that he had developed over the last year while in jail. It did not limit argument on anything that Mr. Scherer himself wanted to share with the District Court. The District Court at the outset said, you have a right to talk, I will listen to anything you have to say, and then turned to Mr. Scherer and asked for him for allocution. This is what the District Court did do. The District Court considered the written argument that was presented in the sentencing memorandum that resolving the new State charges showed that Mr. Scherer was able to communicate with his attorney, that he took responsibility in maintaining contact with his attorney in the court system with respect to those charges, and that doing so set him up well for the future. The District Court also considered the argument at sentencing before he instructed the defense counsel saying, I hear what you're saying, and I'm not buying it, so please move on. This is a very narrow limitation on what counsel was allowed to present. The argument was considered, it was rejected. It's similar to, as Judge Menton noted, the Taylor case, that the argument was considered, rejected, and counsel invited to move on. Suppose it was broader. Suppose, you know, counsel wanted to present on behalf of the defendant, and we're right at the beginning. It says, okay, now I'm going to present the mitigating factors, and the judge says, no, don't want to hear them. Read your sentencing memorandum. We're done. I'm going to proceed to sentencing. Would that be different, and how is this case different from that case, with the exception that here we're dealing with one mitigating factor, not all of them? And, Judge Strauss, I think it would depend on, excuse me, on what the sentencing memorandum said, and what information was presented in the sentencing memorandum, what exhibits were presented with it. I think that is getting toward the DeGroat case from the Second Circuit, that we provided a Citation 228J letter on Monday, that there's no rule as to how the mitigating evidence is presented. And in that case, they said, no, you can't call a character witness. But there's nothing to stop them from presenting written submissions. So in this case, here, where it is such a narrow limitation on an issue that was considered and rejected by the district court, there's simply no error at all. The right to representation and the right to present mitigating evidence and the right to make a statement on behalf of the defendant, it was fully satisfied in this case. So the narrowness matters, and we have to look at the totality of the circumstances. What was presented in the sentencing memorandum? How much the advocate was able to present to the district court? All of that matters in the government's view. I think that's correct, because each of these cases needs to be decided on the facts of this case. And the record in this case is very strong that there was no error, given the narrowness of the limitation. I also want to point out that the point counsel was making, though, was it so weak as to be considered frivolous? The district court certainly viewed it as a weak argument, that he resolved this case with a Rule 43 plea. The language seems to be the court should hear non-frivolous information and argument. And if it's non-frivolous, why wouldn't it have been appropriate to at least give that opportunity? I agree with you, Judge Smith. But the opportunity was afforded and was taken advantage of. The argument had been made. The argument had been considered. The district court didn't buy it. And that told counsel to move on to another argument. So this isn't the case where, I would say, look at the Court's Thurmond case from 2019, where the defendant was not allowed to speak at all about gang association, which formed the basis of one of the violations, was not allowed to present in his allocution mitigating evidence on that. And this Court found no plain error on those facts. This case is not that case. This case, there was simply no error. The right to representation and the right to allocation was fully satisfied on these facts. I also want to ---- Counsel, let me ---- I think you're done with the Chief. Let me ask you, do you believe it's plain error here, or do you think the Fifth Circuit has it right in its unpublished opinion about interrupting counsel preserves an objection? Your Honor, it's our position that plain error applies. Okay. What's your best Eighth Circuit case, counsel? Thurmond, Fleetwood, Suptipio Roeg, all are much closer to the facts in this case. And these are all Eighth Circuit cases, all two of the three published opinions. This isn't the Valtiero or Guttega case, where the counsel tried to make an objection to the guideline calculation and was never allowed to make that objection to the guideline calculation in an initial sentencing, and then circled back and tried to do it again, and then was never allowed to make that argument at all. There's a circle back here, Your Honor, if I may respond. And you know what? I don't want to hear it. It doesn't sound like the right response to I may respond. Go ahead. Your Honor, here, again, not like Valtiero or Guttega, in that the district court then, at the end of the proceeding, at the appropriate time to lodge objections to preserve the record, turned to defense counsel on page 30 of the transcript and asked if there was anything else. That was the appropriate moment to make any objections, and there were none made. But as I said, it does not matter what the standard of review is here. Even if we take Mr. Brower's position that it's abusive discretion, there was no error here, or the error, any error was harmless. I'd like to point that the defense counsel on appeal has not pointed to any argument that could have been made but was not, because the conversation, the district court told her to move on. Now, in the appellant brief at page 17 and the reply brief at page 5, they point out that they would have argued that working with his attorney showed that he had a new mindset toward working with authority figures. But I point the court to the record in this case, particularly page 20, after the district court has told defense counsel to move on. The next point that defense counsel made was that Mr. Scherer had been working with the COs at Sherbourne County, had been doing a really good job, and said specifically, I think what's very notable about that is that my client isn't just that positive relationship with those authority figures like the corrections officers there. So the explicit points, the only thing that defense counsel has pointed out that they would have made but couldn't, was specifically made in the district court after the district court told the attorney to move on. And she also made, preceding that point, in pages 17 to 19, made points that even though he had a contentious relationship with his probation officer, that he recognized that she had some important things for him to say, which also reflected the same points regarding authority figures. So given that there's been no indication of what would have been covered but wasn't, any error is harmless. Unless the court has additional questions for me, which I'm very happy to answer, the United States respectfully asks this Court to affirm the judgment of the district court. Thank you. Thank you, Ms. Healy. Thank you, Your Honors. Very briefly, counsel couldn't comment on the Rule 43 issue that had occurred. The district court spoke in somewhat negative terms about the Rule 43 proceeding, but counsel wasn't allowed to say, Your Honor, there's more to it than that. Rule 43 isn't just a cop-out. It isn't just sliding by. These are the things that are also relevant to the authority that it seemed the district court thought Mr. Scherr was simply sliding by. And he could have been disabused of some of that perception of Rule 43, which I believe was referring to the North Dakota Rule 43, which is essentially the same as Federal Rule 43. In addition, the Valteria Ortega case that we're talking about from the Fifth Circuit is based on Lee, where the district court was found or the objection was found to be being able to speak. It's not simply the same as or as limited of an authority as the government suggested. In addition, there was no opportunity to present additional argument. Page 30, they were asked if there was anything further, counsel, and no, nothing further at the end of the day. That had been addressed by objection. There's no opportunity to submit another brief or to discuss these. He didn't ask if there was a legal reason why this shouldn't be entered, which would have been the opportunity had it been asked. The government saying that the articulation was not sufficient doesn't meet the Fifth Circuit standard, as I described in my brief, where the one sentence was sufficient. Thank you. Thank you. Thank you to both counsel for participating in argument before the court this morning. We appreciate your assistance in resolving the issues presented. We'll continue to study the matter and render decision. Thank you. Madam Clerk, I believe that concludes the scheduled arguments for today. Yes, Your Honor. That being the case, court will be in recess until tomorrow morning.